**SIGNED THIS: August 11, 2008**

_____  
**THOMAS L. PERKINS**  
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CENTRAL ILLINOIS ENERGY, L.L.C., | )   No. 07-82817 |
| | ) |
| Debtor. | ) |

**O P I N I O N**

This matter is before the Court on the objection filed by Springfield Coal Company, LLC (SPRINGFIELD COAL) to the proposed assumption and assignment of two alleged executory contracts by the Debtor, Central Illinois Energy, L.L.C. (DEBTOR).

**FACTUAL BACKGROUND**

The relevant facts are undisputed. The DEBTOR was formed for the purpose of constructing and operating a cooperative ethanol production facility, including an integrated cogeneration facility fueled by waste coal, near Canton, in Fulton County, Illinois.[1] Prior to the commencement of the bankruptcy, in February, 2005, in order to

---

[1] The characterization of the facility as "cogeneration" reflects that it will produce both electric energy and steam. *See* 16 U.S.C. § 796(18)(A). It was originally forecast that the plant would become operational in the Spring of 2004, although all construction would not be complete at that time. *See* http://www.centralillinoisenergy.com/brochures.shtml.

obtain the necessary waste coal from nearby coal slurry pits, the DEBTOR entered into a contract with Freeman United Coal Mining Company (Freeman), whereby the DEBTOR purchased a supply of slurry from Freeman, along with the right to extract the slurry from Freeman's property. In conjunction with that contract, the DEBTOR entered into a contract with Central Illinois Recovery, Inc. (Recovery), whereby the DEBTOR engaged Recovery to excavate the slurry from Freeman's property and deliver it to the DEBTOR'S plant and to receive and dispose of the ash which would result from burning the waste coal.

New agreements which amended and restated the parties' earlier contracts were executed on April 6, 2006.[2] The amended agreement with Recovery contained the following provision at Section 1.1, addressing the term of the contract:

> Term. It is acknowledged and agreed that the Plant will be under construction in early 2006. CIE shall provide Recovery with six (6) months advance written notice of the date on which CIE will first accept deliveries of Slurry from Recovery ("Plant Commencement Date"). If the Plant Commencement Date is after July 31, 2007, Recovery shall not be obligated to excavate the Slurry or perform the obligations of Recovery under this Agreement and Recovery may terminate this Agreement null and void by providing written notice thereof to CIE. If the Plant Commencement Date is prior to July 31, 2007, the term of this Agreement shall continue for a period of ten (10) years from the Plant Commencement Date ("Initial Term"). . . .

The amended contract with Freeman contained essentially the same provision, providing in Article IV, at Section 4.1, as follows:

> It is acknowledged and agreed that the Slurry is intended to be used in connection with CIE's proposed generating facility to be located near Canton, Illinois ("Plant"). CIE shall provide Freeman with six (6) months advance written notice of the date on which CIE will first accept deliveries of Slurry from Recovery ("Plant Commencement Date"). If the Plant Commencement

---

[2] The amended agreement with Freeman is captioned "Amended and Restated Agreement for the Sale of Slurry and Right to Extract Slurry" and the amended agreement with Recovery is captioned "Amended and Restated Slurry Supply and Ash Disposal Contract."

2

>      Date is after July 31, 2007, Freeman shall not be obligated to convey the
>      Slurry to CIE pursuant to Section 1.1 hereof and Freeman may terminate this
>      Agreement null and void by providing written notice thereof to CIE.  If
>      Freeman so elects to terminate, CIE shall pay to Freeman within thirty (30)
>      days of receipt of Freeman's notice the sum of $500,000 in consideration for
>      Freeman keeping the Slurry available to CIE during this period.  If the Plant
>      Commencement Date is prior to July 31, 2007, Freeman shall convey the
>      Slurry to CIE pursuant to Section 1.1 hereof and the term of this Agreement
>      with respect to Access and Recovery shall continue for a period of ten (10)
>      years from the Plant Commencement Date ("Initial Term"), subject to the
>      early termination provisions of Section 4.2 below. . . .[3]

On January 29, 2007, Michael W. Smith, the DEBTOR'S general manager, advised Freeman, in writing, that the "Plant Commencement Date" would be July 31, 2007, and on that date the DEBTOR would begin to accept coal slurry.[4]

Derailed by delays and cost overruns and unable to obtain additional funding needed to complete the facility, the DEBTOR filed for relief under Chapter 11 of the Bankruptcy Code on December 13, 2007.  Shortly thereafter, the DEBTOR filed a motion for approval of procedures for the sale of substantially all of its assets, free and clear of all liens, claims and encumbrances other than valid, perfected mechanics' lien claims and for the assumption and assignment of certain executory contracts, as well as the establishment of the cure amounts under those contracts.[5]  In accordance with the order entered approving those procedures, the DEBTOR filed a Notice of Cure setting forth the amounts the DEBTOR believed would be required in order to assume the various contracts and

---

[3] Section 1.1 of the amended agreement with Freeman requires Freeman, upon receiving notice of the "Plant Commencement Date," to execute and deliver to CIE a bill of sale conveying title to 1,050,000 tons of slurry.

[4] No reference is made, nor does the record contain, a similar notice sent to Recovery.  Given the result reached by the Court, the sending of such a notice to Recovery is not determinative.

[5] Pursuant to Section 365(f), a debtor in possession has the authority to assign an executory contract, but the contract must first be assumed.  11 U.S.C. § 365(f).

3

leases, should the asset purchaser later elect to assume. Included in that list was the amended contract with Freeman for the purchase of slurry with the cure amount shown as zero. Also included on the list was the amended contract with Recovery for the excavation and disposal, with the cure amount shown as $6,229.57. Objections were required to be filed by April 3, 2008.

On April 8, 2008, SPRINGFIELD COAL, as assignee of both amended contracts, objected to the assumption and assignment of those contracts, contending that the agreements are no longer executory and that it has no obligation to perform under the terms of either contract, given the DEBTOR'S failure to meet the July 31st commencement date. In its objection, SPRINGFIELD COAL asserted that it did not object to the cure amount because in its view, the contract could not be assumed. No objections were made to the sale of the DEBTOR'S assets and the parties agreed that SPRINGFIELD COAL'S objection based upon the assumability/assignability of the amended agreements could be resolved at a later date.

The DEBTOR entered into an Asset Purchase Agreement with New CIE Energy, LLC (NEW CIE), whereby NEW CIE agreed to purchase substantially all of the DEBTOR'S assets, agreeing to assume and assign certain executory contracts or unexpired leases, to be designated by NEW CIE following the sale. An order approving the sale and authorizing procedures for the assumption and assignment was entered on April 24, 2008.[6]

---

[6] The order provided, at paragraph 11:

> Any Assumption Objections not resolved at the Sale Hearing shall be resolved at such other hearing scheduled on the Assumption Objection that is reasonably acceptable to Purchaser. With respect to any Executory Contract or Unexpired Lease to which an Assumption Objection is filed, the Executory Contract or Unexpired Lease shall not become an Assumed Executory Contract or Assumed Unexpired Lease until (i) the date on which the Assumption Objection is consensually resolved by the parties or an order of the Court, and (ii) the Executory Contract or Unexpired Lease

4

At a subsequent hearing on June 18, 2008, SPRINGFIELD COAL was given an opportunity to reply to the joint response filed by the DEBTOR and NEW CIE to its objection and the matter was taken under advisement by the Court.

**ANALYSIS**

In accordance with Section 365 of the Bankruptcy Code, a debtor-in-possession may assume or reject an executory contract of the debtor. While the term "executory contract" is not defined in the Bankruptcy Code, the Seventh Circuit Court of Appeals has held that an executory contract for Section 365 purposes is one on which significant performance remains due to some extent on both sides. *In re Streets & Beard Farm Partnership*, 882 F.2d 233, 235 (7th Cir. 1989). This provision, by its terms, applies only to contracts which are "executory contracts" on the date of the filing of the bankruptcy petition. *Dick ex. rel. Amended Hilbert Residence Maintenance Trust v. Conseco, Inc.*, 458 F.3d 573 (7th Cir. 2006). An agreement or contract which has been validly terminated prepetition under applicable state law is not assumable under Section 365.[7] *Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th

---

does not appear on Schedule 1 attached to the Purchase Agreement by the Contract Designation Deadline or the lease Designation Deadline, as applicable. On the date upon which any Executory Contract or Unexpired Lease becomes an Assumed Executory Contract or an Assumed Unexpired Lease, Purchaser shall assume and undertake to pay, perform and discharge when due or required to be performed all of the Debtor's obligations under such Assumed Executory Contract or Assumed Unexpired Lease.

[7] Distinguishable from a contract which has been validly terminated prepetition, is a contract which has been breached prior to the bankruptcy filing. While not all courts agree, some courts have considered that such a contract is no longer executory if the breach is so material that the other party no longer has a duty to perform. *See In re Murtishi*, 55 B.R. 564 (Bankr.N.D.Ill. 1985). The Seventh Circuit has endorsed this result, relying in part on *Murtishi*, but the facts before that court necessarily narrow its ruling. In *Matter of C & S Grain Co., Inc.*, 47 F.3d 233, 237 (7th Cir. 1995), involving a grain dealer who had surrendered its grain licenses to the Department of Agriculture prior to filing a petition under Chapter 11, the court affirmed the ruling of the bankruptcy court in granting motions brought by parties seeking to be excused from their performance under certain grain contracts with the debtor, determining that the debtor's surrender of its grain licenses rendered the debtor incapable of performing under the contracts and constituted an anticipatory repudiation entitling the parties to rescission of the contracts. Other courts have rejected this view, regarding that result as contravening the debtor's express right to cure a default, noting that prepetition breaches of executory contracts by debtors are commonplace. *In re RLR Celestial Homes, Inc.*, 108 B.R. 36 (Bankr.S.D.N.Y. 1989).

Cir. 1984). The filing of a bankruptcy petition cannot resurrect a contract which has been validly terminated.

SPRINGFIELD COAL, relying on the provisions of the amended agreements which excuse it from performing if the plant commencement date occurs after July 31, 2007, maintains that the commencement date has not yet occurred and contends that the amended contracts do not meet the definition of an "executory contract" which requires some performance to be due on both sides of the contract. In response, the DEBTOR and NEW CIE contend that the DEBTOR, as required by the amended contracts, provided notice, on January 29, 2007, that it would begin to accept coal slurry on July 31, 2007, referring to that date as the "Plant Commencement Date." Relying on the DEBTOR'S literal compliance with the terms of the amended agreements, the DEBTOR and NEW CIE contend that, having given the notice required by the amended agreements, it is irrelevant that, one full year after the "Plant Commencement Date," the facility is not yet up and running. In reply, SPRINGFIELD COAL, looking to other provisions of the amended agreements and interpreting those agreements as a whole, maintains that the phrase that "the date on which [the Debtor] will first accept deliveries" must be construed as meaning the date the plant is operating.

Neither the DEBTOR and NEW CIE, with their limited focus on the giving of the contractually required notice long before the filing of the petition, nor SPRINGFIELD COAL, with its emphasis on the facility's current state of nonoperation, speak to the determinative issue of whether the amended agreements were executory contracts when the DEBTOR filed its bankruptcy petition. Unless a contract has expired by its own terms

after the filing of the bankruptcy petition, the "executoriness" of a contract is determined as of the petition date. *In re Penn Traffic Co.*, 524 F.3d 373 (2nd Cir. 2008). The Bankruptcy Code affords a Chapter 11 debtor considerable "breathing space" in making its determination to assume or reject an executory contract, and gives the debtor up to confirmation of the plan to assume or reject. 11 U.S.C. § 365(d)(2). Even where the issue of whether a contract is executory is raised late in the game in response to a motion to assume, the operative date remains the filing of the petition.

When the DEBTOR filed its Chapter 11 petition on December 13, 2007, the amended agreements had not been terminated. SPRINGFIELD COAL makes no assertion that it provided written notice of its election to terminate the contracts to the DEBTOR as it was authorized to do under each of the contracts. Because SPRINGFIELD COAL did not attempt to terminate the contracts, this Court need not address the impact of the facility's unfinished, nonoperational state on either July 31, 2007, the specified "Plant Commencement Date," or on December 13, 2007, the date of the bankruptcy filing. The amended agreements are executory contracts that are subject to assumption under Section 365 of the Bankruptcy Code. Pursuant to the procedure established by this Court, and SPRINGFIELD COAL'S lack of objection to the proposed cure amounts, no monetary default need be cured on the amended agreement for the purchase of slurry and the monetary default needed to cure the amended agreement for the excavation and disposal is fixed at $6,229.57.

The Court's ruling – that the amended agreements are executory contracts which the DEBTOR may assume and assign – is limited in its effect. An executory contract assumed

7

pursuant to Section 365(a) is assumed as a whole – *cum onere* – with both the beneficial and burdensome provisions intact. *In re UAL Corp.*, 346 B.R. 456 (Bankr.N.D.Ill. 2006). An assignment of an executory contract following a debtor's assumption, has no effect upon the obligations to be performed under the contract. *In re ANC Rental Corp., Inc.*, 277 B.R. 226 (Bankr.D.Del. 2002). There is neither a diminution of the debtor's obligations or an impairment of the rights of the other contracting party in the present or in the future. *In re Texaco Inc.,* 254 B.R. 536 (Bankr.S.D.N.Y. 2000).

Pursuant to Section II of the Order entered as Document #189, the assumption procedure adopted by the Court was limited to the issue of the amount of any monetary default that was required to be cured as a condition of assumption. The cure of non-monetary defaults, if any, under Section 365(b), other than "non-monetary defaults deemed invalid by any provision of the Bankruptcy Code" (Order para. 10), was left for another day, a day which has now arrived. A hearing will be scheduled to address those issues as well as any "adequate assurance" issues under Section 365(b).

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###