**SIGNED THIS: November 25, 2008**

                                            **THOMAS L. PERKINS**
                        **UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CENTRAL ILLINOIS ENERGY, L.L.C., | )     No. 07-82817 |
| | ) |
| Debtor. | ) |

### O P I N I O N

This matter is before the Court on the Motion for Allowance of Administrative Expense Claim (the "Motion") filed by HWS Energy Partners, L.L.C. ("HWS"), and the objection thereto of the Chapter 7 Trustee, Gary T. Rafool ("TRUSTEE"). HWS filed a reply to the TRUSTEE'S objection in the form of a supplement to its Motion.

This dispute centers around the Debtor's obligation to insure certain personal property assets referred to as the Water Treatment Facility owned by HWS. That obligation is set forth in an agreement entitled "Water Treatment Facility Lease" (the "Lease") dated April 7, 2006, between Central Illinois Energy, L.L.C. (the "DEBTOR"),

HWS and Central Illinois Energy Cooperative, as follows:

    7.    **INSURANCE.** CIE assumes all risk and responsibility for any accident, injury or damages to persons or property on or about the Water Treatment Facilities occurring subsequent to the Date of Possession and, to the extent allowable by law, agrees to hold the Cooperative and HWS harmless from any and all liability therefrom, including reasonable attorney's fees and court costs. CIE shall at all times during the term of this Lease:

    A.    Carry "All Risk" property insurance with an insurance company or companies licensed to do business in the State of Illinois with limits including fire, insured to replacement cost or other similar value per industry standard, and HWS and the Cooperative shall be named as additional insureds on said policy. At the option of CIE, such proceeds shall be applied to the repair or replacement of the Water Treatment Facilities.

    B.    Obtain and keep in effect public liability insurance, naming HWS and the Cooperative and any mortgagee as additional insureds, with a company or companies licensed to do business in the State of Illinois in an amount not less than $1,000,000.00 for injuries arising out of one accident and $1,000,000.00 for property damage.

    C.    Deposit copies of the insurance policy or policies with HWS and the Cooperative, together with proof of payment of the premiums thereon when due. CIE shall provide HWS, any mortgagee, and the Cooperative with evidence of the above-required insurance in the form of certificates of insurance. These certificates of insurance shall contain a provision that thirty (30) days' prior written notice of cancellation or any material reduction in coverage will be provided to HWS and the Cooperative.

The Lease also contains the following provision pertaining to assignability:

    14.    **ASSIGNMENT.** CIE may assign this Lease to its lenders as security for financing the Project. The lenders may further assign this Lease upon foreclosure or assignment in lieu of foreclosure. No party shall otherwise assign its rights, duties or obligations under this Lease to any other person or entity, either in whole or in part, without the prior written consent of each other Party, which will not be unreasonably withheld.

The DEBTOR filed its voluntary Chapter 11 petition on December 13, 2007, and an order for conversion to Chapter 7 was entered on August 4, 2008. Pursuant to Sections 363(b) and (f) of the Bankruptcy Code, substantially all of the DEBTOR'S assets were sold to New CIE Energy Opco, LLC (New CIE) by order entered April 24, 2008. In conjunction with the sale of assets, the DEBTOR sought to assume certain executory contracts and leases and assign them to New CIE, including the Lease with HWS. HWS has objected to the proposed assumption and assignment of the Lease and that issue remains in litigation.

HWS alleges in the Motion that despite demands on the DEBTOR and New CIE for proof of insurance following the sale of assets, no proof was provided, and HWS purchased its own policy effective May 15, 2008, at a premium cost of $3,029.00. At the hearing, HWS revised that cost downward to $2,273.50, for which it seeks payment as an administrative expense.

The TRUSTEE asserts that the DEBTOR maintained the insurance until May 1, 2008, when New CIE "assumed and purchased the Debtor's insurance policy on May 2, 2008," and that same coverage has been maintained ever since with no lapse in coverage. The TRUSTEE characterizes HWS's purchase as unnecessary, asserting that insurance remained in place and that once the assets were sold, the DEBTOR'S responsibility for insuring the Water Treatment Facility ended. Alternatively, he argues that the claim is premature and should await resolution of the Lease assumption litigation.

HWS contends that as long as the DEBTOR is attempting to assume the Lease, its obligation to insure remains in place. HWS argues that because assumption and assignment of the Lease has not yet occurred, New CIE does not have an insurable interest

in the property, rendering the enforceability of its insurance policy questionable. The TRUSTEE points out that HWS is named as an additional insured on New CIE's policy as to the Water Treatment Facility.

**ANALYSIS**

Whether the Lease is a true lease or something else is the subject of a vigorously contested dispute between HWS and the DEBTOR (and New CIE). The DEBTOR and New CIE maintain that the Lease is a true lease that is assumable and assignable under Section 365(a) and (f). HWS disagrees, arguing that when the Lease is viewed in the larger context of the complex transactions pertaining to the DEBTOR'S development of an ethanol plant, it is not properly characterized as a true lease and, therefore, is not assumable. Contrary to the TRUSTEE'S position, it is not necessary to determine that ultimate issue before deciding the narrow question of whether HWS is entitled to an administrative priority for the insurance premium expense.

The TRUSTEE asserts that the Lease falls under the purview of Section 365 for purposes of assumption and assignment, and is contesting the litigation with HWS on that theory. Since he is attempting to obtain the benefit of Section 365, he must accept its burdens as well. For the limited purpose of deciding HWS's Motion, and with no preclusive effect, the Court will treat the Lease as one within the scope of Section 365.

Chapter 11 debtors-in-possession are required to timely perform all obligations under an unexpired lease of personal property until such lease is assumed or rejected. 11 U.S.C. § 365(d)(5). This provision should be given a strict, literal interpretation. *See HA-LO Industries, Inc. v. CenterPoint Properties Trust,* 342 F.3d 794 (7th Cir. 2003) (construing the

4

companion provision pertaining to real property leases codified at Section 365(d)(3)). The obligations that must be performed are determined by reference to the underlying lease. *Id.* The DEBTOR'S obligation to maintain insurance on the property leased from HWS is an ongoing obligation of the estate until and unless the Lease is rejected. The bankruptcy estate's rights in leased property are no greater than the rights of the debtor, and the estate is bound by the same lease terms as those that bound the debtor prepetition. *In re Palace Quality Services Industries, Inc.,* 283 B.R. 868, 880-81 (Bankr.E.D.Mich. 2002).

While the case remained in Chapter 11, the lessee's obligation to purchase and maintain the insurance was mandatory by operation of Section 365(d)(5). As such, it is entitled to administrative priority under Section 503(b) in an amount corresponding to that portion of the premium attributable to the pre-conversion period. *See In re Midway Airlines Corp.,* 406 F.3d 229, 238 (4th Cir. 2005) (lessor may recover amount representing "all of the obligations" under the lease). The claim is entitled to administrative priority without the need to show benefit to the estate. *Id.* In this way, the specific requirements of Sections 365(d)(3) and (d)(5) override the more general purpose of Section 503(b)(1)(A). *See In re UAL Corp.,* 291 B.R. 121 (Bankr.N.D.Ill. 2003).

Upon conversion to Chapter 7, the lessor of a lease of personal property that may be assumed by the Chapter 7 trustee for the benefit of the estate remains entitled to full performance by the trustee of the debtor-lessee's obligations under the lease. *Palace Quality Services, infra.* Expenses that the lessee is contractually liable to pay under the lease are necessary to preserve the estate's "option" to assume, *see UAL Corp., infra,* and "are expenses necessarily incurred by the estate to preserve that leasehold interest pending the

5

trustee's decision to ultimately assume or reject the lease."[1] *Palace Quality Services,* 283 B.R. at 898. Thus, the entire postpetition, pre-rejection claim for insurance by HWS is entitled to administrative priority under Section 503(b)(1)(A), unaffected by the event of conversion.[2]

The next issue is the effect that the purchase of insurance by New CIE has on HWS's administrative priority claim. HWS is concerned that the insurance coverage obtained by New CIE may not be enforceable against the insurance company, with respect to the Water Treatment Facility assets, since New CIE does not at present have an insurable interest in those assets.[3] *See Wolfram Partnership, Ltd. v. LaSalle Nat. Bank,* 328 Ill.App.3d 207, 220, 765 N.E.2d 1012, 1023 (Ill.App. 1 Dist. 2001) (lack of an insurable interest ordinarily renders a policy of insurance void and unenforceable on public policy grounds). In this Court's view, it is not necessary to decide the issue of enforceability under Illinois insurance law.

It is enough that HWS's concern is not frivolous. In addition, the DEBTOR'S obligation to insure the HWS assets is non-delegable under the terms of the Lease. The DEBTOR remains subject to that restriction until such time as the Lease is actually assumed and assigned.[4] Accordingly, the insurance policy issued to "Riverland Biofuels, Kip

---

[1] The fact that the claimant, HWS, does not need to prove an actual benefit to the estate does not relieve the TRUSTEE from his independent obligation to determine, in the exercise of sound business judgment, whether assumption of the HWS Lease will have a sufficient benefit for the estate to justify his continued pursuit of the assumption motion that he inherited from the Chapter 11 debtor-in-possession. Given that assumption and assignment to New CIE will apparently not result in a payment to the estate, it is questionable whether and to what extent the estate is better off if the Lease is assumed and assigned rather than simply rejected.

[2] Conversion does, of course, bifurcate the claim into two parts, with payment of the pre-conversion portion subordinated to payment of the post-conversion portion under Section 726(b). *See Midway Airlines Corp.,* 406 F.3d at 241.

[3] The Certificate of Liability Insurance identifies the named insured as "Riverland Biofuels, Kip Horton," who, presumably, are potential downstream assignees of New CIE.

[4] Section 365(c)(1) deals with whether non-assignability provisions may prevent the assumption and assignment of an unexpired lease. That section does not operate to relieve a debtor, a debtor-in-possession, or a trustee from the burden of non-assignability clauses while the issue of assumption is disputed and undetermined.

Horton," even though it contains an endorsement naming HWS as an additional insured, does not, over HWS's objection, satisfy the TRUSTEE'S obligation to properly and adequately insure HWS and the Water Treatment Facility assets as required by paragraphs 7 and 14 of the Lease.[5]  HWS's purchase of its own insurance fulfilled and continues to fulfill a nonassignable obligation of the DEBTOR and necessarily benefits the estate.  As such, HWS is entitled to an administrative priority claim for the premium expense in the amount of $2,273.50.  The ratable portion of the premium for the pre-conversion period is a Chapter 11 administrative priority and for the post-conversion period is a Chapter 7 administrative priority.  Payment of the claim must await the TRUSTEE'S administration of estate assets, if any.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###

---

[5] It should also be noted that the DEBTOR is obligated under the Lease to not only insure the property against loss, but also to insure HWS and the Cooperative against liability.  It cannot be determined from the Certificate alone whether the Riverland Biofuels, Kip Horton policy purports to provide liability coverage to HWS.