**SIGNED THIS: January 07, 2011**

_____
THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CENTRAL ILLINOIS ENERGY, LLC, | )    No.  07-82817 |
| | ) |
| Debtor. | ) |

**O P I N I O N**

This matter is before the Court on the motion for partial summary judgment filed by New CIE Energy Opco, LLC (NEW CIE) challenging the application for payment of administrative expenses filed by Green Lion Bio-Fuels, LLC (GREEN LION).

The Debtor, Central Illinois Energy, LLC (DEBTOR) owned real estate near Canton, Illinois, upon which an ethanol plant was to be built.  Adjacent to the DEBTOR'S property is real estate owned by GREEN LION upon which a related grain handling facility was also to be built.  Before construction of either facility was completed, the DEBTOR filed a Chapter 11 bankruptcy petition on December 13, 2007.

Before construction began, the real estate owned by GREEN LION was leased to the DEBTOR pursuant to a Grain Handling Facility Lease dated March 31, 2006 (LEASE), that

identifies the lessor as Central Illinois Energy Cooperative. The parties agree, however, that GREEN LION should be treated as the lessor for purposes of this litigation. Pursuant to a stipulated order, the LEASE was deemed rejected as of April 24, 2008.

On February 4, 2009, GREEN LION filed an amended application for payment of administrative expenses, alleging section 365(d)(3) as the basis for administrative priority status. In pertinent part, that section states:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

In its amended application, GREEN LION alleges that the DEBTOR "breached numerous provisions" of the LEASE "between December 13, 2007, and April 30, 2008" and that the "costs associated with these breaches are recoverable in this case as administrative expenses." GREEN LION alleges that the DEBTOR breached the LEASE provision requiring it to provide the lessor unlimited access to the premises for the purposes of constructing the improvements. GREEN LION alleges that the breach occurred post-petition and pre-rejection when the DEBTOR "ejected" Nostaw, Inc., one of the contractors, from the premises, causing Nostaw to remove it's equipment from the property and refusing to later return and complete construction until and unless it was paid $100,000 to cover its remobilization costs. Similarly, GREEN LION also alleges that another contractor, Weeke Sales & Service, Inc., was also ejected and refused to return until paid an extra $8,450. GREEN LION alleges that it paid these contractors the $108,450 they demanded and that this post-petition claim should be accorded administrative priority status.

Opposing the claim, NEW CIE makes three alternative arguments. First, that

Nostaw and Weeke were not ejected from the site because the DEBTOR did not require or even request that they leave; instead, they voluntarily removed their equipment. The remobilization payments, argues NEW CIE, were not incurred or caused by a breach of the LEASE by the DEBTOR. Second, NEW CIE contends that the remobilization fees are "consequential damages," the recovery of which are expressly excluded by the terms of the LEASE. Third, NEW CIE submits that GREEN LION lacked contractual privity with Nostaw at the time that the remobilization fees were paid. NEW CIE alleges that in or around September, 2007, GREEN LION repudiated the construction agreement with Nostaw by communicating an intent to pay nothing further to Nostaw, whereupon Nostaw entered into a new contract with the DEBTOR to complete the construction work. So, at the time of the alleged ejectment, says NEW CIE, "there was no contract between Nostaw and GREEN LION," the absence of which precludes the administrative expense claim for the remobilization charges.

With respect to the latter issue, the Nostaw construction contract provides, at paragraph 12.2.1, that Nostaw may terminate the contract if the owner fails to make payment when due, but only upon the giving of two written notices of default with the opportunity to cure. The record contains no evidence that any such notice was given by Nostaw. This failure of proof requires denial of summary judgment on this point.

Turning next to the issue of ejectment, and the related issue of causation, there is enough evidence in the record to create a genuine issue of fact. There is evidence in the record that Brent King, acting on behalf of the DEBTOR, as debtor-in-possession, shut down the construction site on December 17, 2007, by locking the gate, thereby prohibiting

access to the site. Since all inferences must be drawn in favor of GREEN LION, as non-movant, this evidence alone is enough to create a genuine issue as to whether King's actions breached paragraph 3.c of the LEASE requiring the DEBTOR to provide "unlimited access" to the site. NEW CIE does not concede that King's actions resulted in a "breach" of the LEASE. Given this genuine issue of material fact, the related issue of why Nostaw and Weeke removed their equipment is not a dispositive issue and the Court declines to address it at this juncture.

The term "consequential damages," in the context of breach of contract, is not one that is susceptible to universal definition. The basic principle for the measurement of contract damages is that the injured party is entitled to recover an amount that will put him in as good a position as he would have been in had the contract been performed as agreed. *Collins v. Reynard,* 154 Ill.2d 48, 51, 607 N.E.2d 1185 (1992). All damages which naturally and generally result from a breach are recoverable; it is only where damages are the consequence of special or unusual circumstances that it must be shown that the damages were within the reasonable contemplation of the parties. *Midland Hotel Corp. v. Rueben H. Donnelley Corp.,* 118 Ill.2d 306, 318, 515 N.E.2d 61 (1987).

The distinction between general damages and consequential damages is crystallized in the Restatement's general measure of damages principle that "the injured party has a right to damages based on his expectation interest as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach. *Restatement (Second) of Contracts* § 347. Consequential damages are necessarily items of loss other than

4

the loss of the benefit or value of the other party's performance. *Id.* at comment c. General damages and consequential damages are mutually exclusive subparts of the injured party's expectation interest. Ordinarily, an injured party's general damages must be determined first. *Id.* at comment b. This determination is a subjective one, based upon the injured party's particular circumstances. *Id.* Logically, if a particular item of damages is determined to be within the scope of the injured party's general damages, the inquiry is at an end given the mutual exclusivity of the two categories. So to know where general damages end and consequential damages begin, it is sensible, if not necessary, to define the extent of the party's general damages first.

NEW CIE makes no effort to identify the general damages to which GREEN LION is entitled, assuming King's actions breached the "unlimited access" provision of the LEASE, or to draw the line of demarcation by contrasting GREEN LION'S general damages with its consequential damages. Instead, NEW CIE jumps over those prickly details straight to the conclusion that the remobilization fees are consequential because they did not flow "directly" and "immediately" from King's actions, relying upon the law dictionary definition that incorporates those adverbs. To the contrary, the Supreme Court of Illinois uses the terms "naturally" and "generally" to draw a contrast with damages that are the "consequence" of "special or unusual circumstances." *Midland Hotel Corp., supra.*

In the Court's view, it is certainly a plausible and reasonable interpretation of the current factual record to characterize the demobilization fees as flowing naturally and generally from King's actions given that the purpose of the unlimited access requirement was to enable the construction of the grain handling facility. Denial of access leads to

stoppage of work which leads to breach and termination of construction contracts. Under these circumstances, it would also be plausible and reasonable to say that the demobilization fees flowed "directly" and "immediately" from King's actions.

NEW CIE relies on the two or three month lapse between the ejection and Nostaw's agreement to return and finish the job. The agreement, however, was made within the pre-rejection period and the time lapse does not break the causal chain of connection between the ejectment and the fees.[1] NEW CIE also replies that the fees were not foreseeable by the DEBTOR. Foreseeability, however, only applies to damages other than those arising naturally from the breach. *Restatement (Second) of Contracts* § 351; *Mandel v. Hernandez*, 936 N.E.2d 1079, 1084, 344 Ill. Dec. 322 (Ill.App. 1 Dist. 2010).

In its amended application, GREEN LION alleges that the DEBTOR breached its duty set forth in the LEASE to maintain and repair the leased premises, resulting in repair expenses incurred by GREEN LION in the amount of $102,882.38 for damage to the grain pile improvements and $58,781.33 for other damages. NEW CIE contends that the damages caused by the Illinois Department of Agriculture to the land and improvements, when it seized and removed the grain stored on the site, are consequential damages excluded from recovery by the LEASE.

On one hand, the Restatement says that "consequential losses include such items as injury to person or property resulting from defective performance." *Restatement (Second) of Contracts* § 347, comment c. On the other hand, paragraph 7.A of the LEASE imposes a specific duty to "fully maintain and repair the leased Premises and all improvements

---

[1] It is an unresolved question of fact, given the evidence (including inferences that favor GREEN LION) on both sides of the issue, whether the contractors were forced off the site or voluntarily left. For purposes of the motion, the Court assumes they were ejected.

thereon during the period covered by the Lease."  In the absence of this provision, the property damages would almost certainly be "consequential damages" resulting from a general breach or wrongful repudiation of the LEASE.  The damages alleged, however, arise naturally from the alleged breach of the repair and maintenance clause.  (Other than repair expenses, what general damages could possibly arise from a breach of a repair and maintenance clause?)

NEW CIE next argues that the damages caused by the Department of Agriculture are barred by the force majeure clause set forth in the LEASE, excusing nonperformance "to the extent that performance is rendered impossible or impracticable by any . . . government acts, orders or restrictions . . . or any other reason where failure to perform is beyond the reasonable control of the non-preforming party."  In its motion, NEW CIE asserts that "upon the full seizure and control of possession of the leased premises by the Illinois Department of Agriculture, the DEBTOR had no legal authority to prevent the Illinois Department of Agriculture's actions, which led to the claimed damages and were beyond the reasonable control of the Debtor."  In its memorandum, NEW CIE reiterates that the DEBTOR cannot be held liable for the damages caused the Department of Agriculture because the department's actions were beyond the DEBTOR'S control.

NEW CIE misconstrues the force majeure provision.  The fact of damage caused by the Department of Agriculture in no way rendered the DEBTOR'S "performance," i.e., repairing the damage, impossible or impracticable.   Likewise, the DEBTOR'S failure to "perform," i.e., repair the damage, was not rendered beyond its reasonable control.  The force majeure provision is clearly inapplicable.

Finally, NEW CIE also contends that GREEN LION'S claim includes work

7

performed by Nostaw that was not repair work, pointing specifically to Nostaw invoices 1784 and 1802. GREEN LION argues that at least a portion of the work referenced in those invoices is properly classified as repair work. Mike Watson's deposition testimony is not detailed enough to refute the inference of repair work raised by the invoices. A genuine issue of fact remains as to what portion, if any, of the work charged in those invoices is for repairs.

For the foregoing reasons, NEW CIE'S motion for partial summary judgment will be denied. The Court has addressed herein only those narrow issues and arguments raised by the parties. Whether GREEN LION is entitled to an administrative priority claim under section 365(d)(3) involves a number of other issues neither raised nor addressed by the parties or the Court. The parties will be given 28 days to file separate pretrial statements that outline their position as to the elements of proof that make up GREEN LION'S case-in-chief, that make up any affirmative defense raised by NEW CIE, as well as a statement of issues including whether each issue is a question of fact or of law.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###